Good morning, may it please the court. Emma Smith on behalf of petitioner appellant Demondray Mayo and I plan on reserving two minutes of my time for rebuttal. Okay. At the time Mr. Mayo pled guilty, the trial court here knew that he had seen a psychologist 14 times with that court's authorization, that he was only 17 years old and that is argued in a motion to suppress his statement to the police, he had limited education and he had a mental disability that required medication. Despite these red flags, the trial court here performed a perfunctory plea canvas that lasted only three and a half minutes. As a result, the record does not show that Mr. Mayo's guilty plea was knowing and intelligent. The trial court here failed to ask basic questions. The trial court did not ask Mr. Mayo's level of education, did not ask whether he was on any medication, and did not ask any treatment that it had authorized. Had the court done so, the full extent of Mr. Mayo's deficits could have been exposed and it would have become clear that Mr. Mayo did not understand the plea or its consequences. The court could have discovered that this was a 17 year old with severe intellectual deficits. He had IQ scores of 66 and 67. He had been designated learning disabled since the age of 20. He was reading at the fourth grade level. He had also been prescribed an antipsychotic, which was causing him to black out, and an antidepressant. But the court failed to ask basic questions to start down the road of inquiring into whether this guilty plea was knowing and intelligent. The Supreme Court has clearly established that it is constitutional error for the trial court to take a guilty plea without ensuring on the record that it is knowing and that this defendant actually understands the plea and its consequences. The Nevada Supreme Court unreasonably applied that precedent here and simply rubber-stamped this deficient plea canvas and ignored evidence in the record. It also made unreasonable factual determinations, which provide an independent basis for de novo review under 2254 D2. Most stark is that on the record, the Nevada Supreme Court said that he hadn't specified what medication he had been prescribed when he had explicitly said he had been prescribed Seroquel, which is an antipsychotic, and Remeron, which is an antidepressant. So the record belied the Nevada Supreme Court's contention. The Nevada Supreme Court also said that the trial court, at the motion to withdraw Mr. Mayo's guilty plea, did not err because it looked at the entire record and there was no evidence to show that this was not knowing and intelligent. But at the time of the motion to withdraw, there was lots of evidence in the record to show that this was not knowing and intelligent. Beyond the 14 transportation orders, there was the 67 IQ score, the fact that he was learning disabled, that his reading level was at the fourth grade level, that he had received Social Security benefits for a mental disability, and that when confronted with tasks that were too difficult for him, he did not ask for help, but because of his deficits, simply shut down. So we're here on, obviously, habeas. Yes, Your Honor. And we have to be extraordinarily deferential to the state courts, and in particular the Nevada Supreme Court here, who did a fairly rigorous review of your arguments and the change of plea. And in fact, isn't it true that the Nevada Supreme Court did such things as look at the psychological evaluation of your client to see if there's any indications in the psychological evaluation that he may not be competent to enter a plea? And of course, they observed that there was nothing within the psychological reports which reflected on his competence. It mostly was depression, and it mostly was mental illness, but it wasn't related to competence. And didn't the Vermont, or didn't the Nevada Supreme Court look at the interview that he had with the police? And apparently, during the course of this interview, which was of course subject to the motion to suppress, he was very lucid and candid about the nature of his defense and the nature of the facts in general. And so therefore, based upon the entire picture, including those reports and those interviews with law enforcement, they concluded that there was really no showing that he was not competent or did lack competence for a change of plea. I have a few responses, Your Honor. First, the claim was not that Mr. Mayo wasn't competent to plead guilty. And this is the distinction, and the distinction from the argument that the State made in its answering brief. The Supreme Court in Godinez v. Moran clarified that the question of competence is whether the defendant is capable of pleading guilty, capable of understanding the guilty plea, as compared to whether the defendant actually did understand the guilty plea in this case. And we're arguing the latter, and that's what was argued before in State court. And what the Nevada Supreme Court said on review is that the trial court, at the motion to withdraw, had looked at all the evidence and said there's nothing there to show this wasn't knowing and intelligent. So the trial court didn't abuse its discretion. But again, there was lots there that did show that, and it may not have risen to the level of Mr. Mayo not being competent, but there was—or sorry, incompetent—but there was lots of evidence in the record that informs whether or not this plea was knowing and intelligent. If this is someone with a fourth grade reading level, and the canvas is complicated, it's filled with legalese, there's nothing in there that breaks it down into ordinary language, that's not something he's going to be able to understand. And as to his interrogation with the police, which is something the Nevada Supreme Court didn't mention, but the district court here, the federal district court did, the fact that he's able to have a colloquial conversation with the police about his lived experiences doesn't mean that he later is going to be able to understand this complicated legal agreement. Well, I thought one of your best arguments was that he had mental illness, he was on medication, etc. And then the most to have an expert witness come in and say, well, based upon these particular medications, they would have such and such an impact on the ability to understand a change of plea, and as a result, there may be expert testimony that this medication would impact that ability. But in fact, there was no evidence at all about the impact of the various medications he was on in his ability to enter a plea. And is that of concern? So Mr. Mayo asked for a hearing in the state court and wasn't afforded one. He asked for a hearing at the motion to withdraw stage and also at his post-conviction petition, and he had met the standard for a hearing. He had put forth specific allegations that were not belied for the record, by the record, that if they were true, would entitle him to relief. And then the state court did not grant him an evidentiary hearing. So the court could find that if that type of evidence was dispositive, then the appropriate remedy would be to remand to the district court for a hearing in that court, if I could reserve the rest of my time. Good morning, Your Honor, and may it please the court. My name is Jessica Perlich, and I represent the respondent appellees in this matter. Your Honors, at the time that Damond Ray Mayo entered his guilty plea in the state district court, nothing in his demeanor or his responses indicated to the district court, state district court, that there was any basis to question whether he understood what he was doing. And in fact, the plea itself met the mandates of the U.S. Supreme Court in Boykin v. Alabama. It demonstrated that he understood the nature of the elements against him, the rights he was waiving by pleading guilty, and the possible punishments he faced. And that was really all that was required. It demonstrated he understood waiving his right against self-incrimination, that he understood he was waiving his right to a jury trial, and to confront his accusers. While there is evidence in the record that came after the plea that he had a low IQ and some intellectual disability, there was nothing at the time of the plea that prevented the state district court from accepting it and determining it was voluntary. And there was no obligation on the judge taking the plea to ask questions that would have revealed this information? No, Your Honor, not under Boykin. Boykin merely says that you have to be aware of the nature and elements of the charges, the rights that are being waived, and the punishment that is faced. Every one of those criteria was met in this matter. Well, it wasn't. It wasn't. Meaning, it's possible that all the words were said, and I'm hypothesizing rather than just telling you what happened here, but I'm hypothesizing. You've got someone who says the right words, but his mind is understanding it. He kind of looks like he's understanding, but those questions don't necessarily establish what you just said needed to be established. Your Honor, taking into consideration, though, that he also had counsel who advised him about the rights he was waiving and what he was entering into, I believe the totality of the record demonstrates that he did meet that criteria. And in the record at page 446, his appointed counsel for the motion to withdraw explains to the court that Mr. Mayo does not dispute that his attorneys consulted with him about this plea, nor does he dispute that the plea canvas was adequate. He merely said that he, after the fact, claims he didn't understand. What the court looked at, what the State court looked at after the fact when it came to the motion to withdraw, was the fact that he was under State law, the plea was considered presumptively valid, it was Mr. Mayo's obligation to overcome that presumption of validity, and the State had the opportunity to rebut. And what the State did was provide, on page 491 to 681 of this record, the extensive juvenile criminal history that this defendant had engaged in. This defendant was not a stranger to the criminal justice system. Although this was his first adult adjudication for murder, he had faced serious charges in the juvenile court, including sex assault of a minor, which was pled down to lewdness. And in fact, when you read the juvenile records that he entered pleas into and received formal probation on, on page 668 and 674, those plea agreements contain the identical information and waiver of rights that the adult waivers do. And, Your Honors, when it comes to the motion to suppress, which was referenced earlier on his statement to the police, which, as Judge Sessions mentioned, indicated a lucid individual who was able to spar with law enforcement, the motion to suppress was based on his status as a juvenile, not his inability to understand and not his inability to speak to law enforcement. It was the fact that law enforcement had given him a waiver of rights for the adult and didn't tell him, or allegedly did not tell him that he had the right to have a parent present. That was the basis of the, of the motion to suppress the statement. There is a problem with a plea colloquy, though. I mean, you'd acknowledge that. I mean, the judge never asked questions which are standardly asked about education, about being subjected to taking drugs or medication before the change of plea. There was no colloquy in which he said he never got any promises or threats prior to the change of plea. I mean, there was, there's a problem in the plea colloquy, but then, of course, you look at the whole situation to make a determination as to voluntariness and knowing waiver. Isn't that right? That is correct, Your Honor, and the plea colloquy, he does indicate that he did so freely and voluntarily and that no one made any promises to him. Although the plea colloquy did not go into his education, the plea agreement itself, which buttresses what was done in the plea colloquy, did indicate that he was not under, at that time, under the medication that would have impeded his ability to understand. I may be wrong. I thought, I thought there was no question that he was asked about whether he was subjected to coercion, threats, or promises prior to the change of plea, which is a standard question in Rule 11, but I may be wrong. Am I wrong there? I believe that there is. I'm trying to look at the colloquy very quickly. The court does ask, and the court does ask, is anyone forcing you to plead guilty today, and he does say no. Are you making this plea freely and voluntarily because you want to? Yes. He answers appropriately. The court does ask appropriate questions, and this is distinct, there is a distinction between the Rule 11 requirements, because this is a state case, and so what we're following is the mandate of Boykin. What did it, what did we ask at the time? We asked whether he understood the rights he was giving up, whether he was doing so freely, whether he understood the charges against him, and he did. Because we're, because this is on federal habeas review, the question is whether this was an unreasonable determination of clearly established federal law, and I believe that the Supreme Court clearly looked at the record as a whole, relied on the findings of the state district court, and determined that this met, this plea met the requirements that Boykin demands. As a result, this court should affirm the district court's finding, and if there are no further questions, then I would submit. Okay, thank you. You have saved some time. Thank you, Your Honor. First, on Mr. Mayo's juvenile record, as the Supreme Court recognized in Adkins, those with intellectual deficits often have impulse control problems, and also cannot learn from their past, and in fact, here, some of Mr. Mayo's deficits are memory deficits, which can't assume that because he pled guilty before, in circumstances that are different because it's juvenile court, that means that he understood now. Also, the idea that his counsel appropriately advised him, we do have the uncertified claim of ineffective assistance. In his pro se motion to withdraw, Mr. Mayo said, counsel didn't explain this to me, and so, and then new counsel on the counseled motion to withdraw said that he had to explain it to him several times, and then Mr. Mayo was adamant that he did not want to plead guilty, so we can't, on this record, assume that trial counsel appropriately advised him and filled in this gap that the court left. Also, there were, there was evidence in front of the court, there were red flags here that should have informed the court that it needed to do more to ensure this was knowing and intelligent. The court had authorized Mr. Mayo to see a psychologist 14 times, and this was a 17-year-old. Instead, the court rushed him through this canvas and didn't fulfill its obligation to ensure, on the record, that this was knowing and intelligent. And if there are no further questions, we'd ask that you either reverse or remand to the district court for a hearing. Okay, thank you. And the case is submitted. I've got one question for you, however, this is unrelated to the particular case. Yes, Your Honor. This is a Nevada case, but you're an Arizona public defender. How are you, why are you here? That is a mistake in my login that was then corrected. I am now in Nevada. Okay. Thank you. Mayo versus State of Nevada submitted for decision.
judges: W. Fletcher, R. Nelson, Sessionsiii